# United States Court of Appeals

*for the*

# Fifth Circuit

---

Case No. 25-20006

DOROTHY ACKERMAN, MARY ACKERMAN, SYLBESTRE ABURTO,
HUNTER BRIAN ADAMS, CLAUDE BARTHOLOMEW ADAMS, *et al.*,

*Plaintiffs-Appellants,*

v.

ARKEMA INCORPORATED,

*Defendant-Appellee.*

_____

MANUEL CRUZ, GABRIELA CRUZ,

*Plaintiff-Appellants,*

v.

ARKEMA INCORPORATED,

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS, HOUSTON IN CASE NO. 4:24-CV-1588
HONORABLE ANDREW S. HANEN, U.S. DISTRICT JUDGE

## BRIEF FOR PLAINTIFFS-APPELLANTS

DENNIS D. SPURLING, ESQ.
  Texas State Bar No.: 24053909
  Southern District of TX
  Federal Bar No.: 718307
DENNIS SPURLING, P.L.L.C.
J.P. Morgan Chase Building
3003 S. Loop West, Suite 400
Houston, Texas 77054
(713) 229-0770

KEVIN W. THOMPSON, ESQ.
  (Pro Hac Vice)
  West Virginia Bar No.: 5062
DAVID R. BARNEY, JR., ESQ.
  (Pro Hac Vice)
  West Virginia Bar No.: 7958
THOMPSON BARNEY LAW FIRM
2030 Kanawha Boulevard, East
Charleston, West Virginia 25311
(304) 343-4401

*Attorneys for Plaintiffs-Appellants*

*(For Continuation of Appearances See Inside Cover)*

CP COUNSEL PRESS    (800) 4-APPEAL • (378301)

P. RODNEY JACKSON, ESQ.
   (Pro Hac Vice)
   West Virginia Bar No.: 1861
LAW OFFICES OF P. RODNEY JACKSON
401 Fifth-Third Center
700 Virginia Street, East
Charleston, West Virginia 25301
(843) 780-6879

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, Appellants certify that the following listed persons and entities have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate potential disqualification or recusal.

1. **Plaintiffs-Appellants:**

   Dorothy Ackerman, Mary Ackerman, Sylbestre Aburto, Hunter Brian Adams, Claude Bartholomew Adams, et al.; Manuel and Gabriela Cruz

2. **Defendant-Appellee:**

   Arkema Incorporated

3. **Counsel for Plaintiffs-Appellants:**

   Kevin W. Thompson; Dennis D. Spurling; David R. Barney, Jr.; P. Rodney Jackson

4. **Counsel for Defendant-Appellee:**

   Michael L. Brem; Thomas E. Birsic; Jackie S. Celender; Wesley A. Prichard

/s/ Kevin W. Thompson
**KEVIN W. THOMPSON**
*Attorney of record for Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument in this case. This appeal presents important legal questions regarding the applicability of *American Pipe* tolling in Texas courts; whether a federal class action can toll the statute of limitations for state-law claims where fair notice is given; and the preservation of Texas property owners' rights to pursue their claims until the Texas courts rule definitively on these issues. Appellants believe oral argument would assist the Court in resolving these significant legal issues.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ............................................................. i

STATEMENT REGARDING ORAL ARGUMENT ...................................................... ii

TABLE OF CONTENTS ............................................................................................ iii

TABLE OF AUTHORITIES ...................................................................................... iv

JURISDICTIONAL STATEMENT ............................................................................. 1

STANDARD OF REVIEW ......................................................................................... 1

ISSUES PRESENTED ................................................................................................ 1

STATEMENT OF THE CASE ................................................................................... 2

SUMMARY OF THE ARGUMENT ........................................................................... 6

ARGUMENT .............................................................................................................. 7

    Texas Recognizes *American Pipe* Tolling For Property-Related Claims ............... 7

    Cross-Jurisdictional Tolling in Texas is an Unsettled Question of Law ............. 8

    *American Pipe* Tolling Protects the "Principal Functions" of Class
    Actions: Establishing Notice and Avoidance Of "Repetitious Papers" ............. 9

    Textualism Provides The Basis For Texas's Adoption Of *American Pipe*
    Tolling In *Grant* ................................................................................................ 11

    The Importance of Fair Notice and The Type of Claim ................................... 13

CONCLUSION .......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974) ................................................................. *passim*

*Bell v. Showa Denko K.K.,*
    899 S.W.2d 749 (Tex. App. —Amarillo 1995, writ denied) .................... 13, 14, 16, 17

*Crown Cork Seal Co., Inc. v. Parker*,
    462 U.S. 345 (1983) ................................................................. 11, 12

*DeFries v. Union Pac. R.R. Co.*,
    104 F.4th 1091 (9th Cir. 2024) ..................................................... 10

*Grant v. Austin Bridge Construction Co.*,
    725 S.W.2d 366 (Tex. App.—Houston [14th Dist.] 1987, no writ) .................... *passim*

*Hall v. Variable Annuity Life Ins. Co.*,
    727 F.3d 372 (5th Cir. 2013) ...................................................... 10

*In re BP P.L.C. Sec. Litig.*,
    51 F. Supp. 3d 693 (S.D. Tex. 2014) ............................................ 14-15

*Jackson v. City of Beaumont Police Dep't*,
    958 F.2d 616 (5th Cir. 1992) ....................................................... 1

*Newby v. Enron Corp.*,
    542 F.3d 463 (5th Cir. 2008) .................................................. 8, 17, 18

*Vaught v. Showa Denko K.K.*,
    107 F.3d 1137 (5th Cir. 1997) ............................................. 15, 16, 17, 18

*Zaragoza v. Union Pac. R.R. Co.*,
    112 F.4th 313 (5th Cir. 2024) ..................................................... 10

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ...................................................................... 1

28 U.S.C. § 1332(d) .................................................................... 1

Andrew W. Bell, *Clarifying the Scope of Texas's Cross-Jurisdictional Tolling Rule: An Exception for Putative Class Members With Property-Related Claims*, 4 Tex. A&M J. Prop. L. 255 (2018) ................................................... 8, 17-18

Fed. R. Civ. Proc. § 12(b)(6) ................................................................. 1

Fed. R. Civ. Proc. § 23 ................................................................... 9, 11

Fed. R. Civ. Proc. § 23(a) ................................................................... 11

Fed. R. Civ. Proc. § 23(b)(2) ................................................................ 4

Fed. R. Civ. Proc. § 23(b)(3) ............................................................. 4, 5

Tex. Civ. Prac. & Rem. Code § 16.003 ................................................... 5

Tex. R. Civ. Proc. § 42 ...................................................................... 11

Tex. R. Civ. Proc. § 42(a) .................................................................. 11

## JURISDICTIONAL STATEMENT

The United States District Court for the Southern District of Texas exercised jurisdiction under 28 U.S.C. § 1332(d) (Class Action Fairness Act). The District Court issued its final judgment dismissing Plaintiffs' claims on December 5, 2024.  Plaintiffs filed a timely notice of appeal on January 3, 2025. This Court has jurisdiction under 28 U.S.C. § 1291, as this appeal is taken from a final decision of the district court.

## STANDARD OF REVIEW

A district court's ruling on a Rule 12(b)(6) motion is subject to *de novo* review. *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 619 (5th Cir. 1992).

## ISSUES PRESENTED

1. Would a Texas state court find that Appellee had fair notice of Appellants' property claims, where those same property claims, arising from the same incident caused by the same conduct of Appellee, were previously asserted in a class action by members of the class?

2. Is it likely that a Texas court would hold that *American Pipe* tolling, recognized in Texas by *Grant v. Austin Bridge Construction Co.*, 725 S.W.2d 366 (Tex. App.—Houston [14th Dist.] 1987, no writ), would apply to a Texas state suit where the court determined that the defendant had fair

notice of the same claims as a result of a class action suit previously filed in a Texas federal court?

3. Did the district court err in ruling that Appellants' claims were time-barred, when Appellants were class members in a prior class action suit that provided Appellee with fair notice of the claims against it?

## STATEMENT OF THE CASE

Plaintiffs-Appellants are Texas property owners and lessees who suffered significant property-related damages due to a series of catastrophic chemical explosions at Defendant-Appellee Arkema's Crosby, Texas facility during Hurricane Harvey. ROA.298. Appellants were also members of the *Wheeler* class action filed in the US District Court for the Southern District of Texas in the immediate aftermath of the explosions and related evacuations. ROA.534-38.

Appellants have alleged, like the class in *Wheeler*, that Appellee failed to prepare for the storm despite knowing their Crosby facility was in a flood-prone area. ROA.298-301, 534-38. This resulted in the failure of backup generator and cooling systems meant to maintain refrigeration of dangerous chemicals at low enough temperatures to prevent their spontaneous combustion, due to their negligent placement below predictable flooding levels. ROA.298-301. Between August 31, 2017 and September 3, 2017, multiple explosions released toxic, flammable chemicals into the surrounding community, forcing residents to evacuate and leaving properties

contaminated with oily, chemical-laden ash. *Id.* Even with floods rising, evacuating Plaintiffs could do nothing to stop the spread of mold and mildew in their abandoned homes until days or even weeks later, for fear of the explosions and exposure to Appellee's toxic chemicals. *Id.*

Among those forced to evacuate were Manuel and Gabriela Cruz, who resided at their ranch located within 1,000 feet of the Crosby facility. ROA. 444-48.  In addition to the threat from the explosions, their property was also directly flooded with contaminated water emanating from the Crosby facility across the road. After the toxic flood waters subsided and smoke from the explosions had dissipated, they discovered their property had been covered in a black, oily film. *Id.* Scientific testing revealed the presence of toxins, including PAHs, dioxins and furans in soil samples taken from their yard. *Id.* The Cruzes raised cattle on their property, which were poisoned and died because of exposure to Appellee's toxins, and their agricultural land was contaminated. *Id.*

Thirty days after the final explosion, property owners in the affected area filed *Wheeler* as a putative class action in the Southern District of Texas on October 3, 2017, asserting federal claims under RCRA and CERLCA, as well as Texas state causes of action. ROA.534-38, 1710 . *Wheeler* sought both injunctive and monetary relief – including for the same property-related damage claim categories asserted in *Ackerman* and *Cruz* – on behalf of all persons with property interests within seven

miles of the Crosby facility. *Id.* The putative class encompassed the *Ackerman* and *Cruz* plaintiffs, who were residents and/or had property interests within seven miles of the Crosby facility. *Id.*

After extensive motion practice, including an appeal to this Court, the district court ultimately granted a partial certification of the class on May 18, 2022, certifying a Rule 23(b)(2) class for injunctive relief but declining to certify a Rule 23(b)(3) monetary damage claim class. ROA.1710. The operative trial plan presented by the plaintiffs contemplated individual follow-on adjudicative proceedings to determine any monetary damage claims the district court declined to certify, pursuant to the Manual on Complex Litigation. ROA.929. After this Court declined to hear Appellee's second appeal challenging class certification, the parties reached a class settlement addressing injunctive relief; it did not, however, address monetary damages. ROA.537. The injunctive relief settlement was approved following a final approval hearing on June 6, 2024. *Id.*

With that settlement in hand, 793 individual members of the *Wheeler* class then filed their own individual actions in Texas state court through the *Ackerman* complaint on April 4, 2024, seeking the monetary damages that the district court had not certified for class treatment. ROA.1710. Manuel and Gabriela Cruz, also class members, filed their own individual suit in Texas state court on April 9, 2024. *Id.* These suits asserted state law causes of action including primarily property-related

claims for loss of use and enjoyment of property, property damages, annoyance, inconvenience, nuisance, aggravation, and out of pocket expenses directly related to evacuation in individual suits – the same claim property-related claim categories included in *Wheeler*. ROA.314, 458-64, 534-43. In filing these actions, these former *Wheeler* class members reasonably relied on the tolling rule first set forth in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) as applied in *Grant v. Austin Bridge Construction Co.*, 725 S.W.2d 366 (Tex. App.—Houston [14th Dist.] 1987, no writ). Under *American Pipe* and *Grant*, 700 days of the two-year statute of limitations provided by Tex. Civ. Prac. & Rem. Code § 16.003 remained after certification of the *Wheeler* monetary relief Rule 23(b)(3) class was denied on May 18, 2022.[1]  Appellants filed suit prior to the date that the statute of limitations would have expired, April 17, 2024.

Appellee removed the two suits to federal court based upon diversity jurisdiction. ROA.1710. Appellee then moved to dismiss both, arguing they were untimely because Texas law does not recognize cross-jurisdictional tolling. *Id.* The district court, while "sympathetic to [Plaintiffs'] concerns" that "the denial of tolling to putative class members would induce them to file redundant suits" resulting in judicial inefficiency and unfairness, agreed based on this Court's previous interpretation of Texas law, and granted Appellee's motion. *Id.*

---

[1] *Wheeler* was filed 30 days after the final explosion at Arkema's Crosby facility.  ROA.534.

As set forth below, the district court erred in dismissing *Ackerman* and *Cruz*. A Texas state court properly applying Texas law would likely find that *American Pipe* tolling applies in cases such as these where there is no question of fair notice to a defendant as to the claims against it.

## SUMMARY OF THE ARGUMENT

Appellants are Texas property owners and lessees who seek to have their property rights vindicated after Appellee's unconscionable neglect forced them to abandon their homes for days on end and left their properties covered in ash and pungent, oily chemical film. Texas law protects the rights of its citizens to use and enjoy their property in peace, and rightly provides Texans remedies when those rights are violated. Appellants seek to exercise those legal remedies; indeed, they have diligently pursued those remedies ever since the *Wheeler* class action was filed one month after the 2017 explosions at the Crosby facility.

After a limited class certification led to a partial settlement of the suit against it, Appellee successfully relied on a flawed interpretation of an unsettled question of Texas law to deny Appellants their rightful remedies, arguing that the statute of limitations had run as to their property claims. Despite Texas courts' recognition of *American Pipe* tolling where, as here, a defendant has fair notice of the claims against it, the district court agreed with Appellee and dismissed Appellants' cases.

But Appellee was wrong, and the district court erred.  Denial of class

certification in *Wheeler* as to the plaintiffs' property claims did not erase those claims –

it simply meant they needed to be pursued individually, as Appellants have timely

done. Extinguishing their claims on this basis would likely be contrary to Texas law,

and would set a troubling precedent that would severely limit access to justice for

Texas property owners, leaving them without recourse following environmental and

natural disasters.

This Court should reject this unfounded abrogation of Texans' property rights,

reverse the district court's dismissal, and permit Appellants' claims to proceed – both

in the interest of justice, and so that Texas courts can properly define the scope of

*American Pipe* tolling under Texas law.

## **ARGUMENT**

**Texas Recognizes *American Pipe* Tolling For Property-Related Claims**

Texas has long recognized that class actions toll the statute of limitations for

putative class members until class certification is resolved. This principle was first

established in *Grant v. Austin Bridge Construction Co.,* 725 S.W.2d 366 (Tex. App.—

Houston [14th Dist.] 1987, no writ), applying the Supreme Court's *American Pipe*

tolling framework to a property-related class action lawsuit filed in Texas state court

that  involved environmental damage and property devaluation due to alleged

negligence, as is the case here. The only difference between *Grant* and Appellants'
suits is that Appellants reasonably relied on a class action filed in Texas federal court
to toll their claims.

**Cross-Jurisdictional Tolling in Texas is an Unsettled Question of Law**

Whether Texas recognizes "cross-jurisdictional tolling" remains an unsettled
question that has resulted in inconsistent answers in state and federal courts. Despite
rejecting cross-jurisdictional tolling in more attenuated circumstances, no Texas state
court has ever definitively addressed whether putative members of a class action
lawsuit filed in Texas federal court that asserts property-related claims based on Texas
law can rely on *American Pipe* tolling. *See* Andrew W. Bell, *Clarifying the Scope of Texas's
Cross-Jurisdictional Tolling Rule: An Exception for Putative Class Members With Property-
Related Claims*, 4 Tex. A&M J. Prop. L. 255 (2018).

Indeed, this Court has recognized that the question of cross-jurisdictional
tolling in Texas remains unsettled, finding in *Newby v. Enron Corp.,* 542 F.3d 463 (5th
Cir. 2008) that while "Texas courts likely [would] not extend *American Pipe* tolling to"
the securities fraud claims at issue, the plaintiffs were "free to pursue this argument
with Texas courts" so that the Texas courts can clarify the reach of Texas's tolling
rules. *Newby,* 542 F.3d at 472.  Appellants intended to do exactly that when filing the
present claims in Texas state court, following the *Wheeler* court's decision to only
partially certify the class action before it. Unfortunately, Appellee's decision to remove

these suits to federal court prevented a Texas state court from resolving the issue, and places it once again before this Court. This Court now has the opportunity to clarify this unsettled question of law and preserve the rights of Texas property owners until cross-jurisdictional tolling between Texas federal class actions and state property-related suits is resolved by the Texas courts. For the reasons below, it is likely that a Texas court would agree that *American Pipe* tolling applies to cases such as Appellants'.

### *American Pipe* Tolling Protects the "Principal Functions" of Class Actions: Establishing Notice and Avoidance Of "Repetitious Papers"

The Supreme Court established the class action tolling doctrine in *American Pipe*, holding that once a class action is filed, the statutes of limitations for all putative class members are tolled until class certification is resolved. The Supreme Court stated that "[a] federal class action is no longer 'an invitation to joinder' but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *American Pipe,* 414 U.S. at 545-50. Members of a putative class are "passive beneficiaries of the action brought on their behalf" until class certification is decided. *Id.* at 551-52. A holding to the contrary "would frustrate the principle functions of the class suit" by forcing putative class members to file motions to join or intervene in order to assure their participation in the judgment, which is "precisely the multiplicity of activity which Rule 23 was designed to avoid in

those cases where a class action is found 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.* at 550-51.

This Court recently reiterated the importance of this function of class actions in *Zaragoza v. Union Pac. R.R. Co.,* 112 F.4th 313 (5th Cir. 2024), stating that for members of a purported class from which they have not been "unambiguously exclude(d)," "ending *American Pipe* tolling with anything short of unambiguous narrowing would undermine the balance contemplated by the Supreme Court" by "encourag[ing] putative or certified class members to rush to intervene as individuals or to file individual actions." (*citing DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091,1099 (9th Cir. 2024)). Indeed, "the class action mechanism would not succeed in its goal of reducing repetitious and unnecessary filings if members of a putative class were required to file individual suits to prevent their claims from expiring." (*citing Hall v. Variable Annuity Life Ins. Co.,* 727 F.3d 372, 375 (5th Cir. 2013)). *Id.*

Further, the Supreme Court has found that when "a named plaintiff who is found to be representative of a class commences a suit [that plaintiff] thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." *American Pipe,* 414 U.S. at 554-55. When a class action is filed, defendants have sufficient information to determine the subject matter and size of the potential litigation, as well as the manner in which the suit will be tried, all within the period set

by limitations. *Id.* at 555. Thus, the Supreme Court stressed the function of class action notice of claims to defendants, and that class action tolling "is in no way inconsistent with the functional operations of a statute of limitations," nor is it inconsistent with its underlying policies. *Id.*

In *Crown Cork Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983), the Supreme Court clarified that *American Pipe* tolling extended not just to members of the putative class who intervene, but also individuals who timely sought to bring individual actions after class certification was denied. This is precisely what Appellants have done here, timely filing their own individual suits after class certification was denied for their individual property claims before the restarted statute of limitations expired.

## Textualism Provides The Basis For Texas's Adoption Of *American Pipe* Tolling In *Grant*

The *Grant* court's adoption of *American Pipe* was based upon the textual reasoning that Rule 42 of the Texas Rules of Civil Procedure was patterned after Rule 23 of the Federal Rules of Civil Procedure,[2] and "[t]herefore, the federal decisions

---

[2] *Compare, for example, Rule 42(a) of the Texas Rules of Civil Procedure*: Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if

    (1) the class is so numerous that joinder of all members is impracticable,

    (2) there are questions of law or fact common to the class,

    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

    (4) the representative parties will fairly and adequately protect the interests of the class;

*to Rule 23(a) of the Federal Rules of Civil Procedure*: Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

interpreting class action procedures provide authoritative guidance for the Texas courts. The Supreme Court has held the filing of the original class suit suspends the applicable statute of limitations as to all asserted members of the class." *Grant,* 725 S.W.2d 366 at 370 (*citing Crown,* 462 U.S. at 354 (1983) *and American Pipe* 414 U.S. at 554 (1974)). Thus, in Texas "[t]he statute of limitations remains tolled for all members of the class until class certification is denied. At that point, class members may elect to file individual suits." *Id.*

The plaintiffs in *Grant* were property owners who sought damages from a construction company that polluted a lake in their subdivision, impairing "their use and enjoyment of the lake and other recreational facilities, and the consequential reduction in the fair market value of each subdivision lot." *Id.* at 367. The *Grant* landowners filed a class action suit based, *inter alia*, on a theory of negligence, as in *Wheeler. Id.* at 368. When the *Grant* court ultimately denied class certification, it held that individual landowners' "right to pursue an individual cause of action is not foreclosed by decertification of the class. Any time remaining on the statute of limitations of the unnamed property owners' individual cause of action on the date of the filing of the lawsuit was restored and began to run again on the date the class was

---

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

decertified." *Id.* at 370.  It is this same right that Appellants assert and ask this Court

to preserve.

**The Importance of Fair Notice and The Type of Claim**

In a markedly different scenario a few years later, another Texas appellate court

found that the *Grant* decision did not go so far as to allow a mass personal injury class

action filed in a New Mexico federal court, based on New Mexico law, to toll the

statute of limitations for a later filed personal injury action in Texas. *Bell v. Showa

Denko K.K.,* 899 S.W.2d 749, 758 (Tex. App.-- Amarillo 1995, writ denied). *Bell*

involved a personal injury lawsuit brought by an individual against a manufacturer of

an allegedly harmful dietary supplement, one of many such suits, including various

class actions, around the country. Acknowledging that *Grant* gave authority for

*American Pipe* tolling to "be effected under the Texas class action provisions," the *Bell*

court further noted that such tolling required that "**the defendant has notice of the

type and potential number of the claims against it**." *Bell*, 899 S.W.2d at 758

(emphasis added). The court observed that *Grant* "was filed in a Texas state court by

plaintiffs who were a **readily discernible group of people claiming injury to

certain property rather than personal injury. That distinction is important** in

determining whether the defendants have received fair notice of the existence of a

claim by the filing of a class suit." *Id.* (emphasis added). By contrast, in *Bell*, "the filing

of a mass personal injury suit, in a federal court, in another state, with the variety of

claims necessarily involved in such a case" was insufficient to provide the defendant with fair notice of the existence of the claims against it to justify the tolling of the statute of limitations. *Id.* It is notable that the only distinction explicitly mentioned as "important" in the *Bell* court's determination that there was insufficient notice was that, unlike *Grant's* "readily discernible group of people claiming injury to certain property," *Bell* involved personal injury among a "variety of claims." *Id.* The differing results in *Grant* and *Bell* demonstrate that, for Texas state courts, the applicability of *American Pipe* tolling turns on the issue of fair notice to a defendant about the potential claims against it. These Texas appeals courts weighed a variety of factors in determining if notice was sufficient, and whether the class action was filed in federal or state court was not determinative; indeed, the *Bell* court only mentioned that distinction in passing.

This is exactly what the Southern District of Texas found in analyzing *Bell*, stating that "the availability of [class action] tolling appears to depend on the following context-specific questions: (1) was the same defendant involved in both the class action and the later-filed individual suit; (2) did the class action give defendant sufficient notice of the type of claim(s) asserted in the later-filed individual suit; and (3) did the class action give defendant sufficient notice of the potential number of claims that could be asserted against it?" *In re BP P.L.C. Sec. Litig.,* 51 F. Supp. 3d 693,

698-700 (S.D. Tex. 2014). Under this analysis, it is clear that *American Pipe* tolling would apply to Appellants because:

(1) the same defendant, Appellee, was named in both *Wheeler* and the later-filed *Ackerman* and *Cruz*, all of which involved the same conduct;

(2) the claims asserted in *Wheeler* as a result of that conduct included the same property-related claims asserted in *Ackerman* and *Cruz*, which were filed only after these claims were excluded in the partial *Wheeler* class certification; and

(3) the geographic class definition in *Wheeler* gave clear notice of the potential number of claims against Appellee.

Clearly, Appellee had fair notice of the property claims against it, regardless of the incidental fact that the *Wheeler* class action was filed in a Texas federal court while the follow-on individual suits were filed in Texas state court.

Nonetheless, the *BP* court also acknowledged that this Court had previously read *Bell* differently in *Vaught v. Showa Denko K.K.,* 107 F.3d 1137 (5th Cir. 1997), and declined to apply *American Pipe* tolling to the plaintiffs' claims. *BP*, 51 F. Supp. 3d 693 at 700. In *Vaught*, this Court addressed another personal injury suit arising from the same allegedly harmful dietary supplement at issue in *Bell*. There, the plaintiffs attempted to assert the status of limitations had been tolled by three class actions filed

across the country in Maryland,[3] which had then been transferred to an MDL based in South Carolina. The defendants, echoing the *Bell* court's emphasis on the distinction between notice as to personal injury versus property claims, countered that the class action tolling doctrine "governs only property damage-type claims, not mass personal injury claims, for which class certification has historically been disfavored" and that *Bell* "controls this issue because *Bell* held that, under *American Pipe*, class action does not toll state personal injury claims." *Vaught*, 107 F.3d at 1144.

The *Vaught* court interpreted *Bell* narrowly, finding *Grant*'s application of *American Pipe* tolling extended only to state court class actions involving state claims. At the same time, the *Vaught* court acknowledged the *Bell* court's emphasis that "the *American Pipe* tolling rule was meant to apply only where a class action gives a defendant notice of the 'type and potential number of the claims against it – for example, where a discernible group of people claim injury to certain property.'" *Vaught*, 107 F.3d at 1144 (*quoting Bell*, 899 S.W.2d at 758).

This Court ultimately focused on a different distinction, federal versus state class actions, characterizing the *Bell* court's holding as stating that "the federal class action involved (New Mexico) did not toll the limitations period on Bell's state claims pending a certification ruling." This Court went on to explain that "(i)n the light of Bell, we understand Texas' tolling rule to operate as follows: A state (Texas) class

---

[3] Two filed in federal court, and one in Maryland state court that had been removed.

action that raises property damage-type claims tolls a Texas statute of limitations pending a certification ruling. And, consistent with our understanding of this Texas tolling rule, **it is unclear** whether, under this rule, a federal class action filed in Texas or in any other State would ever toll a Texas statute of limitations, regardless of the type of claims raised," and declined to apply *American Pipe* tolling to the *Vaught* plaintiffs' claims. *Id.* at 1147 (emphasis added).

Similarly, in *Newby*, this Court declined to extend *American Pipe* tolling in a federal securities fraud class action to plaintiffs' Texas state law securities claims, relying to its previous interpretation of *Bell* in *Vaught* that "Texas courts likely will not extend American Pipe tolling to this situation." *Newby*, 542 F.3d at 472. However, like the *Vaught* court, the *Newby* court also left the door open to cross-jurisdictional tolling, stating that the plaintiffs were "free to pursue this argument with the Texas courts, so the state courts can clarify the reach of Texas's tolling rules." *Id.*

While this Court may have settled into a skeptical posture on the question of whether Texas courts allow cross-jurisdictional tolling, the particular facts of the present cases on appeal, and their resonance with Texas courts' central concerns with fair notice, warrant giving the doctrine another look. No Texas court has ever addressed the question of whether putative members of a class action filed in Texas federal court that asserts Texas property-related claims can rely on *American Pipe* tolling. *See* Andrew W. Bell, *Clarifying the Scope of Texas's Cross-Jurisdictional Tolling Rule:*

*An Exception for Putative Class Members With Property-Related Claims*, 4 Tex. A&M J. Prop. L. 255 (2018). This case falls squarely into this unsettled area of Texas law, which remains an open question in both Texas courts and this Court.

This Court has been justifiably unwilling to extend *American Pipe* tolling to situations where fair notice is questionable, as in *Vaught* and *Newby*. Here, however, there is no legitimate question as to whether Appellee had fair notice of the property claims against it stemming from the explosions at their Crosby facility. Appellants were members of the putative *Wheeler* class, and plead their property claims in the *Wheeler* complaint.

A close reexamination of *Grant* and *Bell* analyses reveals no substantive reasons to extinguish Appellants' rights to pursue their property claims. Texas courts have consistently recognized that, unlike class-based personal injury claims, class-based property claims provide defendants with fair notice, and would likely apply *American Pipe* tolling under the facts and circumstances now before the Court.

## **CONCLUSION**

Appellants respectfully request this Court revisit the question of cross-jurisdictional tolling in Texas, reverse the district court's decision, and allow Appellants' claims to proceed – both in the interest of justice, and so that Texas courts can properly define the scope of *American Pipe* tolling under Texas law.

/s/Kevin W. Thompson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2025, a true and correct copy of the foregoing Brief for Plaintiffs Appellants was served via electronic filing with the Clerk of Court and all registered ECF users.

Dated: March 3, 2025

<u>/s/Kevin W. Thompson</u>

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word.  Excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 4392 words.

<u>/s/ Kevin W. Thompson</u>